**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DARRELL CHAPMAN,

                                 Plaintiff,                No. 9:19-CV-1257
                                                    (GTS/CFH)

    v.

MICHAEL A. BELIVEAU and
MATTHEW A. COREY,

                                Defendants.
_____

**APPEARANCES:**                                 **OF COUNSEL:**

DARRELL CHAPMAN
25100-052
Oakdale Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 5000
Oakdale, Louisiana 71463
Plaintiff <u>pro se</u>

Albany County Attorney's Office          KEVIN MCDONALD CANNIZZARO,
112 State Street                                   ESQ.
Albany, New York 12224
Attorneys for defendants

**REPORT-RECOMMENDATION**[1]

**I. Background**

    Plaintiff <u>pro se</u> Darrell Chapman ("plaintiff"), an inmate currently in the custody of

the United States Federal Bureau of Prisons, commenced this action on October 11,

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order by 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

2019, seeking damages pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights under the Eighth Amendment against the Albany County Correctional Facility, Jane and John Doe defendants, and the United States Marshal Service.  See Dkt. No. 1.  On December 2, 2019, the Court's dismissed several claims, sua sponte, including the claims against the United States Marshals Service and Albany County Correctional Facility.  See Dkt. No. 4.  Thereafter, plaintiff filed an amended complaint asserting Eighth Amendment deliberate indifference claims against defendants, corrections officers Michael A. Beliveau ("Officer Beliveau") and Matthew Corey ("Officer Corey") (collectively, where appropriate, "defendants").  See Dkt. 10 ("Am. Compl.").

Presently pending before the Court is defendants' motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  See Dkt. No. 31.  Plaintiff has failed to file any opposition to the motion.  See Dkt. Nos. 34, 35.  For the following reasons, it is recommended that defendants' motion be granted and plaintiff's complaint be dismissed in its entirety, with prejudice.

## II. Summary Judgment Standard

Summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  An issue of fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Id. (citations omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citations omitted).

The moving party bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006). To meet this burden, the moving party can demonstrate that the non-movant has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotext Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-movant

> bears the burden of proof at trial, the movant may show prima facie entitlement to summary judgment in one of two ways: (1) the movant may point to evidence that negates its opponent's claims or (2) the movant may identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings.

Salahuddin, 467 F.3d at 272-73 (citing Celotex, 477 U.S. at 323 (citations omitted)).

Where the moving party satisfies its burden "in either manner," the non-movant must "point to record evidence creating a genuine issue of material fact." Salahuddin, 467 F.3d at 273 (citations omitted). However, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "[c]onclusory allegations, conjecture and speculation. . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Major

League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008). Nevertheless, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." Id. (citations omitted).

     In the Northern District of New York, Local Rule 56.1(b) requires the party opposing summary judgment to "file a separate Response to the Statement of Material Facts." N.D.N.Y. L.R. 56.1(b). The response must "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs." Id. Importantly, "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."[2] "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Rather, "[s]uch a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting FED. R. CIV. P. 56(C)). "Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially

---

[2] Local Rule 56.2 also requires a party moving for summary judgment against a pro se litigant to "inform the pro se litigant of the consequences of failing to respond to the summary judgment motion." The movant's counsel must "send a notice to the pro se litigant that a motion for summary judgment seeks dismissal of some or all of the claims or defenses asserted in their complaint or answer and that the pro se litigant's failure to respond to the motion may result in the Court entering a judgment against the pro se litigant." N.D.N.Y. L.R. 56.2. Defendants filed a "Certificate of Service" affirming that a notice was served on plaintiff. See Dkt. No. 33.

meritorious memorandum of law, the non-movant is deemed to have 'consented' to the legal arguments contained in that memorandum of law[.]" West v. Harkness, No. 9:17-CV-621 (GTS/DJS), 2021 WL 4289515, at *10 (N.D.N.Y. Sept. 21, 2021) (collecting cases) (citing N.D.N.Y. L.R. 7.1(a)(3)). "Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess[es] facial merit, which has appropriately been characterized as a 'modest' burden." Id. (citations omitted).

### III. Undisputed Facts[3]

In October 2017, plaintiff was incarcerated in the Albany County Correctional Facility ("ACCF") following his arrest for drug- and weapons-related charges. See Dkt. No. 31-26 at 1, ¶ 1. Plaintiff was subsequently arrested by the Federal Bureau of Investigation in December 2017 on federal charges for possession of cocaine and heroin, trafficking and conspiracy to traffic narcotics and, weapons-related charges. See id. at 2, ¶¶ 2-3. Plaintiff was incarcerated at ACCF from August 2018 until November 2020.[4] Id. at 2, ¶ 4.

---

[3] Defendants have submitted considerable record evidence in support of their motion, including several sworn statements from witnesses and the parties, in admissible form. See Dkt. No. 31. Plaintiff's complaint, which is notarized and reflects the words "Sworn to before me[,]" has also been considered as part of the record evidence. Am. Compl. at 8; see also Douglas v. Perrara, No. 9:11-CV-1353 (GTS/RFT), 2013 WL 5437617, at *3 (N.D.N.Y. Sept. 27, 2013) (explaining that, where the plaintiff did not respond to a summary judgment motion, ". . . the Court will accept the facts as set forth in [the defendants' Statement of Material Facts]. . . supplemented by [the plaintiff's] verified complaint. . . as true.") (citations omitted).

[4] Plaintiff was transferred to Rensselaer County Jail before returning to ACCF on August 29, 2018. See Dkt. No. 31-26 at 2, ¶ 2.

On August 26, 2019, the New York State Parole Board conducted a final parole revocation hearing at ACCF, and decided to revoke plaintiff's parole status. See Dkt. No. 31-26 at 2, ¶ 5. Plaintiff's parole was revocation finalized on September 3, 2019. See id. Thereafter, the United States District Court for the Northern District of New York scheduled plaintiff for an in-person Change of Plea Hearing on September 27, 2019, at the federal courthouse in Syracuse, New York. See id. at 2, ¶ 6; see also U.S. v. Chapman, No. 1:17-CR-401 (FJS), Dkt. Nos. 81-82. Defendants were assigned to an ACCF unit to transport plaintiff to Syracuse for the appearance. See Dkt. No. 31-26 at 2, ¶¶ 6-7.

On the morning of September 27, 2019, defendants were assigned to Unit 320, a prisoner transport van. See Dkt. No. 31-26 at 2, ¶¶ 7; 18. Defendants inspected the van "prior to their departure from ACCF in order to ensure that the vehicle was in safe and operable condition." Id. at 2, ¶ 8. Plaintiff, who was the only prisoner transported to Syracuse, was shackled around both of his feet and handcuffed with his hands attached to a belt secured around his waist. See id. at 3, 4, ¶¶ 13, 16. Additionally, "a black box was placed around his handcuffs as an added security device to ensure he would not tamper with the locking mechanism." Id. at 4, ¶ 13. Plaintiff did not have a seatbelt on. Id. at 3, ¶ 15. Once plaintiff was secure, defendants entered the vehicle for the drive to Syracuse, leaving around 8:00 AM. See id. at 4, ¶ 18. Officer Beliveau drove while Officer Corey sat in the passenger seat supervising plaintiff. See id. at 4, ¶ 19.

The van arrived at the federal courthouse in Syracuse at approximately 10:00 AM. See Dkt. No. 31-26 at 5, ¶ 25. During plaintiff's court appearance, he plead guilty to possession of 500 grams or more of cocaine, conspiracy to distribute the same, and

6

weapons-related charges.  Id. at 5, ¶ 28; see also U.S. v. Chapman, No. 1:17-CR-401 (FJS), Dkt. Nos. 81-82.

Around 12:00 PM, defendants placed plaintiff into the back of Unit 320 for the return trip to ACCF.  See Dkt. No. 31-26 at 6, ¶ 30.  Plaintiff was secured in in the rear of the van on the right-hand side.  See id. at 6, ¶ 31.  Plaintiff was shackled and handcuffed in the same manner as the previous trip.  See id. at 6, ¶32.  Plaintiff was able to freely move his legs and could lift his hands "just under chest-level."  Id.  In addition to plaintiff, defendants transported seven other federal inmates from Syracuse to Albany.  See id. at 6, ¶ 33.  Approximately five to six inmates were seated in the rows directly in front of plaintiff.  See id. at 6, ¶ 34.

Officer Beliveau confirmed that there were no conditions threatening the safety and health of the inmates inside the van.  See Dkt. No. 31-26 at 6, ¶ 35.  Like the previous trip, Officer Beliveau drove while Officer Corey rode in the passenger seat, monitoring the inmates.  See id. at 7, ¶¶ 36-37.  Officer Corey also provided directions using a GPS on his cell phone.  See id. at 7, ¶ 37.

"[A]round 1:53 p.m., the transport van was traveling eastbound on Interstate 90 approaching mile marker 162 and 163."  Dkt. No. 31-26 at 7, ¶ 43.  The van was in the left-hand lane farthest from an approaching entrance ramp.  See id. at 7-8, ¶ 43.  "Suddenly, [defendants] observed a vehicle driven by a third-party motorist entering Interstate 90 from the entrance ramp on the right-hand side."  Id. at 8, ¶ 44.  Without warning, the vehicle crossed over two lanes of traffic and into the far-left lane where the van was traveling.  See id.  Officer Beliveau immediately applied the brakes to avoid collision, moving far to the left-hand side of the lane, without colliding into the guardrail.

Id. at 8, ¶ 45.  Despite Officer Beliveau's efforts, the "motorist struck [U]nit 320 on the front passenger side close to where Officer Corey was seated."  Id. at 8, ¶ 46.

Following the accident, the motorist pulled off to the right-side of Interstate 90.  See Dkt. No. 31-26 at 9, ¶ 51.  Officer Beliveau stopped Unit 320 on the left-hand side where the accident occurred before navigating over to the motorist's vehicle.  See id.  At that point, defendants inquired as to whether the inmates sustained any injuries from the accident.  Id. at 9, ¶ 53.  All of the inmates in the van reported sustaining injuries.  Id. at 9, ¶ 54.  "Officer Beliveau then contacted his supervisors, reported the accident, and called for emergency medical services."  Id. at 9, ¶ 55.  Officer Beliveau also approached the motorist, who reported no injuries.  See id. at 10, ¶ 56.

Shortly thereafter, emergency medical responders, including individuals from the New York State Police, Schenectady County Sheriff's Office, Albany County Sheriff's Office, and Mohawk Ambulance Service arrived at the scene.  See Dkt. No. 31-26 at 10, ¶ 57; Dkt. No. 31-21.  A state police officer identified as Trooper Vigliotti took statements from all parties at the scene.  Dkt. No. 31 at 10, ¶ 58.  The motorist stated to Trooper Vigliotti that he did not see the van as he changed lanes.  See Dkt. No. 31-22 at 4.  Ultimately, Trooper Vigliotti issued the motorist a traffic ticket for changing lanes in an unsafe manner.  See Dkt. No. 31-26 at 10, ¶ 58.  Neither defendant received a ticket or citation.  Id. at 10, ¶ 59.

Although none of the inmates, including plaintiff, had any visible injuries, the Albany County Sheriff's Office decided to transport everyone to Albany Memorial Hospital based on their complaints.  See Dkt. No. 31-26 at 10, ¶ 61.  Plaintiff received treatment but was not diagnosed with any injuries.  See id. at 11, ¶ 63; Dkt. No. 31-7 at

8

60-62. Following treatment, the inmates were returned to ACCF without further incident. See Dkt. No. 31-26 at 11, ¶ 64. Since the date of the accident, no medical professional has diagnosed plaintiff with any resulting injuries. See id. at 11, ¶ 65. A subsequent investigation by the Albany County Sheriff's Office determined that the motorist was responsible for striking Unit 320 and that, despite Officer Beliveau's efforts, the accident was unavoidable. See id. at 10, ¶ 60; Dkt. No. 31-21.

ACCF maintains a multiple-step inmate grievance procedure that includes both informal and formal processes for reaching a resolution. See Dkt. No. 31-9 at 24-25; see also 9 N.Y.C.R.R. §§ 7032.1 et seq. First, an inmate may attempt to resolve an issue formally or informally by discussing the matter with a tier officer assigned to his housing unit within five days of an alleged incident. See id. at 24, ¶ 2. If no resolution is reached, the inmate may request and file a formal grievance form. See id. at 24-25, ¶¶ 3-8. Upon receiving the grievance form, the inmate must submit the same to a tier officer within five days of receipt. See id. at 25, ¶ 8. In the event the inmate is dissatisfied with the Grievance Coordinator's initial decision, he may appeal to the facility's Chief Administrative Officer. See id. Finally, if the appeal has been denied at the facility level, the inmate may appeal the decision to the New York State Commission of Corrections. See id. at 25, ¶ 9.

ACCF has no record of any grievance filed by plaintiff relative to the September 27, 2019, motor vehicle accident. See Dkt. No. 31-26 at 12, ¶ 72; Dkt. No. 31-24 at 4, ¶¶ 16-18. The only grievance records ACCF has regarding plaintiff concern two unrelated matters from 2019 and 2020. See Dkt. No. 31-26 at 11, ¶¶ 67-68, 72; Dkt. No. 31-24 at 2-3, ¶¶ 5-18. Despite being familiar with ACCF's grievance procedure,

9

plaintiff admits he never filed a formal grievance relative to the September 27, 2019, accident. See Dkt. No. 31-26 at 12, ¶ 69; Dkt. No. 31-7 at 66-8. Plaintiff states he never attempted as much because he "wasn't willing to talk about [the incident] and he "wasn't really interested in having a conversation about it."[5] Id. at 12, ¶¶ 69-71; Dkt. No. 31-7 at 66-8.

### IV. Analysis

### A. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before bringing an action for claims arising out of his or her incarceration. See Porter v. Nussel, 534 U.S. 516, 524 (2002); 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. Furthermore, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. See id. at 524. "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules[.]'" See Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford v. Ngo, 548 U.S. 81,

---

[5] While not referenced in defendants' Statement of Material Facts, the undersigned notes that during plaintiff's deposition he stated that he "put something on paper[,]" but could not recall if he ever pursued an appeal. Dkt. No. 31-7 at 65-66.

88 (2006)). The applicable procedural rules ". . . are not defined by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218.

"As an affirmative defense, it is the defendants' burden to establish that [the] plaintiff failed to meet the exhaustion requirements." Matthews v. N.Y. State Dept. of Corrections, 9:17-CV-503 (TJM/ML), 2022 WL 823851, at *4 (N.D.N.Y. Mar. 18, 2022) (citations omitted). A defendant satisfies this burden ". . . by 'demonstrating that a grievance process exists' and that the plaintiff failed to utilize the grievance procedure." Ellis v. Riquier, No. 9:17-CV-577 (BKS/DJS), 2022 WL 523746, at *3 (N.D.N.Y. Feb. 22, 2022) (quoting White v. Velie, 709 F. App'x 35, 38 (2d Cir. 2017) (summary order); Williams v. Prianto, 829 F.3d 118, 126 n.6 (2d Cir. 2016)). If the defendant meets that burden, the plaintiff ". . . must show that 'other factors rendered a nominally available procedure unavailable as a matter of fact.'" Ellis, 2022 WL 523746, at *3 (quoting Hubbs v. Suffolk Cnty. Sheriff's Dept., 788 F.3d 54, 59 (2d Cir. 2015) (citations omitted)).[6]

New York State has set forth minimum standards and regulations governing inmate grievance procedures that county corrections facilities must abide by. See generally 9 N.Y.C.R.R. §§ 7032.1 et seq. A facility's grievance filing procedure must:

---

[6] The Supreme Court has stated that "[a]n inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). There are three circumstances in which a court may find a facility's internal administrative remedies are not available under the PLRA:
> (1) An administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;
> (2) an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use; and (3) an administrative remedy is not 'available' when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Matthews, 2022 WL 823851, at *5 (quoting Ross, 578 U.S. at 643; Girard v. Chuttey, 826 F. App'x 41, 44 (2d Cir. 2020) (summary order)).

(1) allow a complaint to be submitted within five days of an alleged incident; (2) provide an internal process for appeals to the facility's chief administrative officer, including access to the necessary forms; and (3) permit a further appeal to the New York State Commission of Corrections within three working days following receipt of the chief administrative officer's determination.  See 9 N.Y.C.R.R. §§ 7032.4-7032.5.  Furthermore, an inmate must be given notice of and access to a facility's grievance procedure.  See 9 N.Y.C.C.R. §§ 7032.4(a)-(c).

      Herein, plaintiff commenced this action pursuant to 42 U.S.C. § 1983 seeking damages relative to an incident that occurred while he was incarcerated at ACCF; thus, plaintiff was required to exhaust any available administrative remedies prior to suit.  See Porter, 534 U.S. at 532.  Defendants argue that plaintiff admits that he failed to exhaust ACCF's available administrative remedies.  See Dkt. No. 31-27 at 8-11.  Defendants have introduced admissible evidence showing that ACCF maintains a multi-step procedure for inmates seeking to file grievances concerning jail conditions that satisfies the standards set forth in 9 N.Y.C.R.R § 7032.  See Dkt. No. 31-9 at 24-25; Dkt. No. 31-27 at 9-10.  Undisputedly, that procedure was available to plaintiff as defendants have affirmatively shown he previously used the same administrative remedies to file two unrelated grievances, which he later appealed to the State Commission on Corrections.  See Dkt. No. 31-26 at 11, ¶¶ 67-68, 72; Dkt. No. 31-24 at 2-3, ¶¶ 5-18.  During his deposition, plaintiff admitted that he never attempted to pursue a grievance relative to the September 27, 2019, accident because he "wasn't willing to talk about it" and "wasn't really interested in having a conversation about it."  Dkt. No. 31-26 at 12, ¶¶ 69-71; Dkt. No. 31-7 at 66-8.

Defendants have satisfied their burden establishing that plaintiff failed to exhaust his administrative remedies prior to bringing this action, as required under the PLRA. See Matthews, 2022 WL 823851, at *4 (citations omitted). Moreover, in light of plaintiff's failure to file any opposition, the undersigned finds that plaintiff has effectively "consented" to defendants' affirmative defense argument. L.R. 7.1(a)(3); West, 2021 WL 4289515, at *10 (citations omitted). As such, it is recommended that plaintiff's complaint be dismissed in its entirety with prejudice for failure to exhaust his available administrative remedies. See Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir. 2004) (clarifying that dismissal for failure to exhaust available PLRA remedies may be with prejudice ". . . in the absence of any justification for not pursuing available remedies[.]").

### B.  Deliberate Indifference[7]

"The Eighth Amendment requires prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" Morgan v. Dzurenda, 956 F.3d 84, 89 (2d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted)). To establish a "failure to protect" claim, an inmate may establish a constitutional violation by showing "(1) 'that [the plaintiff] is incarcerated under conditions posing a substantial risk of serious harm,' and (2) that the prison official had a 'sufficiently culpable state of mind,' which in 'prison-conditions cases' is 'one of deliberate indifference to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 834) (internal quotation marks and citations omitted).

---

[7] As addressed herein, for the sake of a complete analysis, the undersigned finds plaintiff's claims also substantively lack merit, as argued in the alternative by defendants.

"[The] deliberate indifference standard embodies both an objective and a subjective prong.'" Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). "First, the alleged deprivation must be, in objective terms, sufficiently serious." Id. (citations omitted). "Second, the charged official must act with a sufficiently culpable state of mind." Id. "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66; see also Kelsey v. City of N.Y., 306 F. App'x 700, 702 (2d Cir. 2009) (summary order) (quoting Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (explaining that "'[d]eliberate indifference' is 'a mental state more blameworthy than negligence'—it is 'a state of mind that is the equivalent of criminal recklessness.'") (internal citations and quotation marks omitted)).

Similar to a failure to protect claim, "[i]n order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976).

> Although medical deliberate indifference claims are most often asserted against medical personnel, non-medical personnel may also be held liable for deliberate indifference to medical needs where a plaintiff proves that 'prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.'

Crichlow v. Annucci, No. 9:21-CV-692 (DNH/TWD), 2022 WL 179917, at *15 (N.D.N.Y. Jan. 20, 2022) (quoting Dailey v. Fuller, No. 9:15-CV-1051 (BKS/TWD), 2016 WL 7732236, at *9 (N.D.N.Y. Dec. 5, 2016) (citations omitted)). "The serious medical needs standard contemplates a condition of urgency such as one that may produce death,

degeneration, or extreme pain." Charles v. Orange Cnty, 925 F.3d 73, 86 (2d Cir. 2019) (citing Hathaway, 99 F.3d at 553).

Herein, plaintiff asserts that defendants denied his request to have "a seatbelt [] placed on him" during his transport from Syracuse to Albany. Am. Compl. at 4. However, ". . . failure to provide seatbelts to prisoners is not a constitutional violation under § 1983." Carrasquillo v. City of N.Y., 324 F. Supp. 2d 428, 437-8 (S.D.N.Y. 2004) (discussing two Tenth Circuit cases deciding that the failure to provide seatbelts to prisoners does not violate federal rights) (citing Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 907 (8th Cir. 1999); Dexter v. Ford Motor Co., 92 F. App'x 637, 641 (10th Cir. 2004)); see generally Jabbar v. Fischer, 683 F.3d 54 (2d Cir. 2012) (per curiam) (holding, in matter of first impression, that the failure to provide inmate with seatbelt, without more, does not violate the Eighth Amendment). Nonetheless, plaintiff's claim is not premised solely on a failure to provide a seatbelt during transport; rather, he asserts defendants acted "[]recklessly" while transporting him, knowing that plaintiff was "not wearing [a] safety belt[]." Am. Compl. at 7, ¶ 1.

Defendants clarify that the Eighth Amendment—not the Fourteenth Amendment—applies to this action because, at the time of the accident, plaintiff's State parole status had been revoked and he had accepted a plea agreement regarding his federal charges just hours before.[8] See Dkt. No. 31-27 at 11-12. Defendants contend that ". . . [a] commonplace vehicle accident. . . is not ordinarily the basis for a claim of a

---

[8] Presumably, defendants made this clarification because plaintiff's initial pleading implied that he was a pre-trial detainee at the time of the accident, prompting the Court to initially review his claims under the Fourteenth Amendment. See generally Dkt. No. 1; Dkt. No. 4. However, following the Court's initial review, plaintiff amended his complaint, clarifying that he had already been convicted when the events at-issue occurred. See Am. Compl. at 4.

15

federal constitutional deprivation[,]" arguing that mere negligence is insufficient for Section 1983 claims. Id. at 13-14 (citations omitted). However, plaintiff asserts that defendants acted "[]recklessly" in "operating the prison van at unsafe speeds, exceeding the legal limit, handling a cell phone, tailing and driving dangerously close to other vehicles," knowing that plaintiff was riding in the back without a seat belt. Am. Compl. at 5, 7.

Plaintiff admits that he cannot confirm whether any allegedly reckless conduct was occurring at the precise moment of the accident. See Dkt. No. 31-27 at 15; Dkt. No.31-7 at 23-24, 37, 39, 42-43. Moreover, defendants have submitted admissible record evidence showing that a third-party motorist caused the accident by unsafely changing lanes. See Dkt. No. 31-26 at 10, ¶ 58. Defendants have also shown that the accident occurred despite Officer Beliveau's immediate efforts in braking and moving the van to the farthest point away from the motorist without hitting the guardrail. See Dkt. No. 31-26 at 10, ¶¶ 45-46. Accordingly, there is no record evidence demonstrating that either defendant acted recklessly or otherwise failed to protect plaintiff in connection with the accident.

To the extent plaintiff asserts a deliberate indifference claim based on his alleged injuries resulting from the accident, defendants facilitated prompt emergency care and transport to a nearby hospital. See Dkt. No. 31-26 at 10, ¶ 61; Dkt. No. 31-7 at 60-62. Defendants adduce evidence indicating that immediately following the accident, they inquired as to whether the inmates sustained any injuries from the accident. Id. at 9, ¶ 53. In light of multiple reported injuries, Officer Beliveau contacted his supervisors, reported the accident, and called for emergency medical services. Id. at 9, ¶¶ 54-55.

Shortly thereafter, emergency medical responders, including sheriff's personnel and ambulance services arrived on scene.  See Dkt. No. 31-26 at 10, ¶ 57; Dkt. No. 31-21. Despite the absence of any visible injuries, the Albany County Sheriff's Office decided to transport everyone to a hospital based on their complaints.  Id. at 10, ¶ 61.  Thus, the record evidence shows that defendants acted without delay in attending to plaintiff's apparent medical problems.

In any event, the record reveals that plaintiff did not suffer a sufficiently serious injury.  While plaintiff claims he ". . . continues to suffer from sever [sic] pain[,]" it is undisputed that plaintiff had no "visible" injuries, was treated at a hospital following the accident, and received no diagnosis of any injuries.  Am. Compl. at 7, ¶ 3; Dkt. No. 31-26 at 11, ¶ 63.  Likewise, it is undisputed that, since the date of the accident, no medical professional has diagnosed plaintiff with any resulting injuries.  See Dkt. No. 31-26 at 11, ¶ 65.  See, e.g., Charles, 925 F.3d at 86 (citing Smith v. Carpenter, 316 F.3d 178, 187 (2d Cir. 2003) (stating that "[i]n most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm."); Rodriguez v. Mercado, No. 00-CV-8588, 2002 WL 1997885, at*3, *8 (S.D.N.Y. Aug. 28, 2002) (stating that bruises to the plaintiff's head, back, and wrists, accompanied by back pain and migraines but no loss of consciousness, did constitute a sufficiently serious medical condition for purposes of Eighth Amendment claim); Decayette v. Goord, No. 9:06-CV-783 (TJM/GHL), 2009 WL 1606753, at *1 (N.D.N.Y. Jun. 8, 2009) (citations omitted) (stating that the plaintiff's "visible injuries were limited to cuts, bruises and swelling. . . [and] [i]njuries of this nature are not conditions of urgency that threaten death,

17

degeneration or extreme pain."). Considering there is no evidence showing plaintiff suffered a serious injury, it cannot be said that defendants acted with deliberate indifference to his medical needs.[9]

In sum, plaintiff has failed to establish that defendants acted with deliberate indifference in violation of his constitutional rights under the Eighth Amendment.[10]

### V. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 31) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's complaint's (Dkt. No. 1) be **DISMISSED WITH PREJUDICE** and without an opportunity to amend;

**ORDERED**, that the Clerk of the Court serve a copy of this Report Recommendation and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

---

[9] The undersigned notes that plaintiff alleges that he still suffers "pain," and that ACCF's medical care has provided only ". . . 30 day prescriptions of motrin[,]" despite his repeated requests to see a doctor. Am. Compl. at 6. However, this contention is not directed at defendants, but rather ACCF's medical staff, who were not named in this action. See id. Notwithstanding, the merits of the issue need not be addressed as plaintiff's complaint must be dismissed for his failure to exhaust available administrative remedies.
[10] Defendants argue, in the alternative, that they are entitled to qualified immunity from suit. See Dkt. No. 31-27 at 17-18. As plaintiff's complaint is barred by his failure to exhaust his administrative remedies under the PLRA and, notwithstanding, the record evidence shows he cannot otherwise establish a deliberate indifference claim, the undersigned does not need address the qualified immunity issue. See District of Columbia v. Wesby, 138 S.Ct. 577, 589 n. 7 (2018) (quoting Camreta v. Greene, 563 U.S. 692, 707 (2011) (cautioning that ". . . lower courts 'should think hard, and then think hard again,' before addressing both qualified immunity and the merits of an underlying constitutional claim[.]")).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), that the parties have FOURTEEN (14) days within which to file written objections to the foregoing report. Any such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).[11]

Dated: May 13, 2022
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[11] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(c).